**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No.  05-10160-01 |
| ) | |
| TAM X. VU PHAN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Defendant's amended motion to quash search warrant (Doc. 39);

2. Government's response (Doc. 40); and

3. Defendant's motion for Franks hearing (Doc. 41).

The court held a Franks[1] hearing on December 19, 2005.

Factual Background

Defendant stands charged in a four count indictment with various drug violations, all of which are alleged to have occurred on August 11, 2005 (Doc. 16). The charges, at least in part, are based upon the results of a search of defendant's apartment in Wichita conducted by local authorities pursuant to a search warrant issued by a state judge. The affidavit in support of the warrant was received as Gov. Ex. 1. The affiant, Detective Kevin Mears, testified at the Franks hearing. Based upon the testimony of Mears, the testimony of Lieutenant Scott Heimerman and the contents

---

[1] Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)

of the affidavit, the following appear to be the relevant facts:

On August 11, 2005, Detective Mears, acting in an undercover capacity, spoke by telephone to defendant's codefendant regarding a purchase of crack cocaine. The codefendant advised Mears that he would contact Mears when he obtained crack cocaine from his supplier. In a subsequent call approximately two hours later, the codefendant advised Detective Mears that he and a "friend" were cooking the crack cocaine and that the codefendant would call Detective Mears in approximately 30-45 minutes when the crack cocaine was finished. Thirty to forty-five minutes from the second call would have been approximately 12:30 to 12:45 p.m.

At 12:50 p.m., the codefendant called Detective Mears to say the crack cocaine was ready. The codefendant told Detective Mears to come to a supermarket parking lot located at the intersection of Rock Road and East Central in Wichita where the buy was to take place. When Detective Mears arrived shortly after 1:00 p.m., the codefendant was not present. Detective Mears called the codefendant who said that the buy would occur at the codefendant's apartment. Detective Mears declined to go to the apartment and insisted that the buy occur at the agreed-upon location. The codefendant agreed to come to the supermarket parking lot.

Another officer, Detective Ruston Fasig[2], was surveilling apartment #712, which is in a complex located one long city block from the supermarket parking lot. At 1:24 p.m., Detective Fasig reported that he observed the codefendant leave apartment #712, get

---

[2]Detective Fasig was subpoenaed by defendant but defendant did not call him to testify.

into a green Honda automobile and drive out of the parking lot. Four minutes later, the codefendant handed Detective Mears three bags which the codefendant identified as crack cocaine. The substance in the bag was hot and wet. Detective Mears arrested the codefendant.

Shortly after the codefendant's arrest, Wichita police officers went to apartment #712. Defendant Phan was present in the apartment along with other individuals. The officers made a security sweep of the apartment, the validity of which is not challenged, during which they observed an empty pot and baking soda near a stove. This information, which was relayed to Detective Mears, was significant to him, especially because the crack cocaine delivered by the codefendant was hot and wet. However, the officers who conducted the security search reported that they did not see any crack cocaine or other illegal drugs during the security search. Detective Mears did not include this information in his affidavit for a the search warrant. Similarly, Detective Mears did not include in his application that surveilling officers had lost sight of the Honda automobile during the two hours preceding 1:06 p.m. when Lieutenant Heimerman saw the Honda in the parking lot shortly before the codefendant left apartment #712, got into the Honda and drove to the supermarket parking lot where he met with Detective Mears. Detective Mears <u>did</u> include in his affidavit that he had been advised by another Wichita police

officer, Detective Paul Nicholson[3], that on August 9, 2005, he had received an anonymous complaint that the occupants in apartment #712 were selling drugs and that they possessed weapons.

Based upon these facts, and with the assistance of a state prosecutor, Detective Mears applied for and obtained a search warrant for apartment #712. The warrant was issued at 4:41 p.m. on August 11, 2005. It was executed shortly thereafter. The officers found drug paraphanelia and other evidence of illegal drugs.

### Defendant's Request for a Franks Hearing

The court approached defendant's request for a <u>Franks</u> hearing with considerable reluctance because such hearings are not routinely held in every case involving a search warrant. On the contrary, the standard for such a hearing is fairly high, as indicated in <u>United States v. Artez</u>, 389 F.3d 1106 (10th Cir. 2004), where the court observed:

> Under <u>Franks v. Delaware</u>, a defendant may request an evidentiary hearing regarding the veracity of a search warrant affidavit. 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Before the defendant will be entitled to such a hearing, however, the defendant must allege deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. <u>Id.</u> at 171, 98 S. Ct. 2674. Affidavits of witnesses should be provided to the court or their absence satisfactorily explained. <u>Id.</u> Allegations of negligence or innocent mistake are insufficient. <u>Id.</u> If these requirements are met, then the defendant must show that the remaining content of the warrant affidavit is insufficient to support a finding of probable cause. <u>Id.</u> at 171-72, 98 S. Ct. 2674. "The standards of deliberate falsehood and reckless disregard set forth in Franks apply to material omissions, as well as affirmative

---

[3]Detective Nicholson also was present at the hearing but was not called as a witness by defendant.

falsehoods." <u>Avery</u>, 295 F.3d at 1166.

It was not at all clear to the court from defendant's amended motion what defendant was contending constituted a deliberate falsehood or reckless disregard for the truth in Detective Mears' affidavit or what constituted a material omission from the affidavit. Defendant's amended motion was not accompanied by affidavits of witnesses nor was their absence explained, much less satisfactorily explained. The court's inclination was to deny defendant's request for a <u>Franks</u> hearing but, not wanting to risk a reversal, the court elected to hold a hearing as a matter of expediency.

At the hearing, the court questioned defendant's counsel closely with respect to the "Statement of Facts" set forth in defendant's amended motion (Doc. 39 at 3-4). Counsel admitted that none of the facts (some, but not all of which, were taken from Detective Mears' affidavit) constituted a deliberate falsehood or reckless disregard for the truth. Rather, counsel asserted that the affidavit materially omitted information regarding the whereabouts of the Honda automobile prior to 1:06 p.m. when Lieutenant Heimerman saw the vehicle in the apartment parking lot at 505 North Rock Road shortly before the codefendant came out of apartment #712. According to the testimony of Detective Mears, the surveillance team had lost sight of the Honda for approximately two hours prior to its being spotted by Lieutenant Heimerman in the parking lot. In his amended motion, defendant seemed to suggest that because the surveilling officers lost sight of the Honda for a couple of hours prior to its discovery in the parking lot of

-5-

apartment #712, the failure to report this in the affidavit misled the state judge because the codefendant could have obtained the crack cocaine at some other location.

The court is unable to understand defendant's point and finds that defendant has not met his burden to demonstrate that Detective Mears' failure to mention the "surveillance lapse" of the Honda constituted a material omission. The court cannot imagine how information regarding the "surveillance lapse" would have made any difference to the state judge's decision to issue a warrant to search the apartment in view of the (unchallenged) statement in the affidavit that Detective Fasig saw the codefendant leave the apartment less than five minutes before the codefendant delivered the crack cocaine to Detective Mears, among other statements which implicated the apartment as a drug location. The universally-accepted standard is that the issuing judge's decision in determining whether probable cause exists to support the warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'bases of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). See also United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004).

The court would be justified in denying defendant's amended motion to quash at this point. However, out of an abundance of caution, the court will comment upon the arguments set forth in

-6-

defendant's amended motion.

## Defendant's Arguments

Defendant contends that the "anonymous tip" referred to in Detective Mears' affidavit was insufficient to establish probable cause because there is no evidence that the "tipper" was reliable. If Detective Mears' affidavit contained only the information regarding the anonymous tip, the court would be inclined to agree. However, the validity of a warrant is not determined by "nit-picking" discreet portions of the application. Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed. Illinois v. Gates, 462 U.S. at 238-39. The anonymous tip was only part of the information contained in the affidavit regarding possible criminal activity at apartment #712. There is no evidence that the state judge issued the search warrant based solely upon the anonymous tip.

Defendant also contends that the good faith exception set forth in Leon[4] does not apply because:

(1) The state judge was misled by the aforesaid material omission;

(2) The state judge wholly abandoned his detached and neutral role because the application "lacked a sufficient nexus to either Phan or his residence";

(3) The warrant was based on an affidavit so lacking in indica of probable cause as to render official

---

[4]United States v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

-7-

        belief in its existence entirely unreasonable due to the alleged "lack of sufficient nexus"; and

(4)    The warrant was facially deficient and because Detective Mears was primarily responsible for executing the warrant, he could not have reasonably presumed it to be valid.

The court firmly rejects these claims. For the reasons already stated, the court finds that defendant has not shown that the state judge was misled. There is absolutely no evidence that the state judge abandoned his judicial role and defendant's counsel is admonished regarding the impropriety of this claim. Defendant also has not demonstrated that the affidavit lacked an indicia of probable cause or that the warrant (which was not offered in evidence) was facially deficient.

## Conclusion

Defendant's amended motion to quash (Doc. 39) is denied.

IT IS SO ORDERED.

Dated this __4th__ day of January 2006, at Wichita, Kansas.

                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE